eFiled
7/9/2026 10:03:48 AM
Superior Court
of the District of Columbia

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

GREATER DC DIAPER BANK
Plaintiff

vs.

Case Number 2026-CAB-004696

DONOHOE REAL ESTATE SERVICES, INC.
Defendant

## SUMMONS

To the above named Defendant: Donohoe Real Estate Services, Inc.

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Michael F. Williams
Name of Plaintiff's Attorney

Kirkland & Ellis LLP, 1301 Pennsylvania Avenue, N.W.
Address
Washington, D.C. 20004

(202) 389-5123
Telephone

Clerk of the Court

By ______________
Deputy Clerk

Date **July 10, 2026**

如需翻译,请打电话 (202) 879-4828 Veuillez appeler au (202) 879-4828 pour une traduction Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시오 የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

GREATER DC DIAPER BANK,
5614 Connecticut Ave. NW #285
Washington, DC 20015

Plaintiff,

v.

WWDC INDUSTRIAL PARK, LLC and DONOHOE REAL ESTATE SERVICES, INC.,
1110 Bonifant Street, Suite 210
Silver Spring, MD 20910

7101 Wisconsin Ave., Suite 700
Bethesda, MD 20814

Serve: J. Patrick May, Esq.
2000 Tower Oaks Blvd. 8th Floor
Rockville, MD 20852

Defendants.

Case No. 2026-CAB-004696

## COMPLAINT

Plaintiff, Greater DC Diaper Bank ("The Diaper Bank"), by and through its counsel, Kirkland & Ellis LLP ("Kirkland"), brings this Complaint against Defendants, WWDC Industrial Park, LLC, ("WWDC" or the "Landlord") and Donohoe Real Estate Services, Inc. ("Donohoe") (together, the "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

The Diaper Bank seeks recompense for its Landlord's breaches of contract and Defendants' other unlawful conduct. The Diaper Bank rented commercial warehouse properties from its Landlord, which The Diaper Bank uses as sites to store and distribute essential baby and hygiene

products to vulnerable families in the region. For years, water leaked through a defective roof at one of these leased properties, a warehouse located at 8846 Monard Drive, Silver Spring, Maryland, 20910 ("8846 Monard Drive"). The Diaper Bank notified Defendants of these leaks ***more than a dozen times***, and each time, Defendants ignored, delayed, or failed to respond with a permanent solution. These ongoing and worsening roof leaks slowed, and at times, halted the entire distribution operations of one of The Diaper Bank's core programs. Defendants' failures resulted in, among other things, water damage to the warehouse drywall, and mold and mildew resulting from repeated water exposure. Deprived of sufficient warehouse space to safely store inventory for the long term, The Diaper Bank was forced to at once liquidate more than $125,000 worth of inventory that was originally earmarked for distribution in months ahead. Worse, The Diaper Bank was forced to permanently shut down one of its most successful core programs. Due to the shuttering of this program, The Diaper Bank lost out on more than $600,000 in donor contributions that would have otherwise been distributed to families in need. The Diaper Bank has attempted to resolve disputes relating to 8846 Monard Drive with Defendants for nearly a year, but it has been met with Defendants' persistent refusal to engage in good-faith negotiations, and false promises. During a meeting between the parties on January 15, 2026, Defendants offered to, among other things, (1) abate rent for the year during which 8846 Monard Drive was unfit for The Diaper Bank's intended use and (2) terminate the lease associated with 8846 Monard Drive on the condition that The Diaper Bank vacate 8846 Monard Drive. In reliance on Defendants' promises coupled with Defendants' consistent record of failed roof repairs and maintenance, The Diaper Bank obliged and vacated 8846 Monard Drive in mid-January 2026. Without justification, Defendants took back that promise and, worse, demanded rent for the months ***after*** The Diaper

Bank vacated 8846 Monard Drive ***at Defendants' direction.***[1] 8846 Monard Drive was unfit for its intended use for approximately sixteen months until The Diaper Bank was constructively evicted. Despite the ongoing untenable conditions of 8846 Monard Drive and prolonged negotiations, The Diaper Bank continued making good-faith payments in rent and related costs through January 2026 exceeding $50,000. All in, The Diaper Bank has suffered compensable damages in excess of $775,000.00 as a result.

## PARTIES

1. Greater DC Diaper Bank is a non-profit 501(c)(3) corporation incorporated in Washington, D.C. that distributes essential basic baby needs and personal hygiene products to indigent families and individuals throughout Washington, D.C. and the surrounding areas. The Diaper Bank runs its distribution center out of Silver Spring, Maryland. The Diaper Bank's mailing address is 5614 Connecticut Ave. NW #285, Washington, DC 20015. The Diaper Bank is a party to the Lease Agreement with Defendant WWDC Industrial Park, LLC, which includes 8846 Monard Drive.

2. WWDC is a Maryland limited liability company with its principal place of business in Rockville, Maryland. WWDC owns and operates an industrial park inside the Beltway in Montgomery County, Maryland and is a party to the Lease Agreement with Plaintiff, The Diaper Bank.

3. Defendant Donohoe is a company with its principal place of business in Bethesda, Maryland and is organized and existing under the laws of the District of Columbia. Donohoe

[1] On May 8, 2026, Donohoe filed an action against The Diaper Bank in the District Court of Maryland for Montgomery County – Rockville seeking repossession of 8846 Monard Drive and money judgment for rent allegedly owed between December 2025 through May 2026. Because The Diaper Bank had already vacated 8846 Monard Drive by January 15, 2026, it agreed to surrender possession of the property by returning the keys to Donohoe. On June 30, 2026, Donohoe voluntarily dismissed the action. *See WWDC Indus. Park, LLC v. Greater DC Diaper Bank, Inc.*, No. D-06-LT-26-103092-001 (Md. Dist. Ct. May 8, 2026).

provides landlord representation services to WWDC. The Diaper Bank transmits all its service requests and other day-to-day tenant-landlord matters through Donohoe.

## JURISDICTION AND VENUE

4. The subject matter jurisdiction of this Court is invoked pursuant to the provisions of D.C. Code § 11-921(a).

5. This Court has personal jurisdiction over the Defendants pursuant to the provisions of D.C. Code § 13-423. WWDC is subject to personal jurisdiction because it transacted business in the District of Columbia within the meaning of D.C. Code § 13-423(a)(1). Specifically, WWDC negotiated the Lease Agreement with The Diaper Bank. By directing its negotiations towards a party incorporated in Washington, D.C., and entering a contractual relationship with that party, WWDC purposefully transacted business in the District of Columbia.

6. Donohoe is subject to personal jurisdiction because it regularly transacts business in the District of Columbia within the meaning of D.C. Code § 13-423(a)(1), thereby establishing the requisite minimum contacts with the forum.

7. Venue is proper in the Superior Court of the District of Columbia pursuant to D.C. Code § 11-921, because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within the District of Columbia.

## STATEMENT OF FACTS

***The Diaper Bank is a Trusted and Critical Source of Essential Goods for the Community.***

8. The Diaper Bank is the largest diaper bank in the D.C., Maryland, and Virginia area and is one of the largest diaper banks nationwide. Its mission is to distribute essential baby and hygiene products to vulnerable families and expand access to critical services. With the help of

its community partners, The Diaper Bank has delivered on its mission, becoming a trusted source of essential everyday goods for thousands of families for over fifteen years.

9. Every year, The Diaper Bank serves more than 42,000 families in need across the DMV through its four unique programs: The Diaper Distribution Network, The Baby Pantry, The Nursery Project, and The Monthly.

10. The Diaper Distribution Network partners with eighty-seven community organizations to deliver diapers to over 48,000 babies per year, meeting 14% of the diaper need in the region. Since its founding in 2010, The Diaper Bank has distributed over 65 million diapers across 375 zip codes.

11. But The Diaper Bank's work does not stop at diapers. Through The Baby Pantry, The Diaper Bank provides families with additional baby products, including baby food, formula, wipes, and baby bathtubs. Through The Nursery Project, The Diaper Bank supplies families with essentials to care for newborns, including car seats, baby carriers, strollers, diaper bags, and diaper kits. And through The Monthly, The Diaper Bank addresses a neglected public health crisis, period product need and period poverty, by supplying hygiene products to women and girls in need.

12. No other local organization provides diapers and hygiene products at this scale.

13. The Diaper Bank's work is of considerable growing importance, as diaper insecurity continues to rise nationwide. As of 2025, nearly 50% of families with young children were struggling to afford diapers. Parents experiencing diaper insecurity were twenty-one times more likely to report missing work or school because they lacked the diapers necessary to place their baby in childcare.[2]

---

[2] *See* Kelley E. C. Massengale, *The NDBN Diaper Check 2026: Diaper Insecurity Among U.S. Children And Families*, Nat'l Diaper Bank Network, (Apr. 15, 2026), https://nationaldiaperbanknetwork.org/the-ndbn-diaper-check-2026/.

14. The Diaper Bank's staff and volunteers have dedicated their lives to addressing diaper and hygiene insecurity in their community.

***The Diaper Bank Enters a Lease for the 8846 Monard Drive Property.***

15. On July 11, 2013, The Diaper Bank entered into a Lease Agreement with Landlord for 8858 Monard Drive, Silver Spring, Maryland 20910 ("8858 Monard Drive") located in the WWDC Industrial Park. The Lease was amended several times through lease modification and extension agreements ("Lease Amendments") dated July 27, 2015; May 20, 2019; June 4, 2021; April 5, 2022; and September 18, 2023. Through the Lease Amendments dated July 27, 2015, May 20, 2019, and June 4, 2021, the parties expanded the Lease Agreement to include 8856 Monard Drive, Silver Spring, Maryland 20910 ("8856 Monard Drive"), 8860 Monard Drive, Silver Spring, Maryland 20910 ("8860 Monard Drive"), and the property at issue, 8846 Monard Drive, respectively (together with 8858 Monard Drive, the "Leased Premises").

16. Donohoe serves as Landlord's property manager and agent for the Leased Premises.

17. Section 3.14 of the Lease Agreement ("Elements of Constructive Eviction") provides that a claim for constructive eviction may arise if "Landlord fails to remedy the conditions within a reasonable time after receipt of the [tenant's] notice."

18. WWDC did.

19. Section 4.1 of the Lease Agreement ("Repairs by Landlord") provides that "Landlord agrees, at its expense, to maintain and keep in repair the structural parts of the Leased Premises."

20. WWDC did not.

***Greater DC Diaper Bank's Intended Use of the Leased Premises.***

21. The Diaper Bank's intended use for the Leased Premises is to receive, sort, store, and distribute donated goods received from community and corporate partners through its core programs. 8846 Monard Drive served this intended use until Defendants' failures rendered the premises unusable.

22. In addition to once storing donated goods, 8846 Monard Drive functioned as a modest office space for The Diaper Bank's day-to-day operations.

23. 8846 Monard Drive was the only warehouse space where community-based organization partners ("community partners") would enter and frequent the interior of the premises.

24. In addition to storing donated goods, 8860 Monard Drive serves as the main entry point, where staff, volunteers, and community partners check in at the loading doors upon arrival.

25. Ordinarily on arrival, community partners check in at 8860 Monard Drive, then go to the loading dock at 8856 Monard Drive to pick up their organization's orders of diapers and other supplies. Community partners would then enter 8846 Monard Drive and "shop the shelves" directly.

26. As a result of Defendants' failures, 8846 Monard Drive was rendered unsuitable for The Diaper Bank's day-to-day office operations, forcing The Diaper Bank to consolidate those operations to other premises.

***Defendants Fail to Maintain and Repair the Leaking Roof at 8846 Monard Drive.***

27. For years, but especially beginning in the winter of 2024, persistent leaks from the roof of The Diaper Bank's main distribution site for The Baby Pantry slowed, and at times, halted entire distribution operations. In fact, the leaks forced The Diaper Bank to shut down The Baby

Pantry, one of its core programs. From 2024 to 2025, The Diaper Bank notified Defendants ***more than a dozen times*** both via email and by submitting service requests to maintain and repair the roof damage. Each time The Diaper Bank complained, Defendants slapped on temporary, Band-Aid solutions—never meaningful nor permanent. As the seasons turned, the leaks worsened—first into puddles then into water flow through the warehouse. Defendants' failures to resolve the leaks put The Diaper Bank's distribution goods and operations at risk. Left with no other choice, The Diaper Bank promptly distributed more than $125,000 worth of product at once, depleting its inventory for the months that followed.

28. On June 26, 2023, The Diaper Bank submitted its first service request for the roof leak at 8846 Monard Drive. The leak ran along the roof support beam and dripped into the warehouse and onto the storage containers of The Diaper Bank's distribution goods. As a result, The Diaper Bank's staff was forced to spend significant time and effort cleaning its premises and ensuring that its products were fit for distribution. Many were not. Montese Adams, a Donohoe employee, assured The Diaper Bank that he would contact a roof repair vendor to resolve the issue.

29. But the leak continued.

30. As early as mid-2024, The Diaper Bank began draping a tarp over its products whenever it rained or snowed on distribution days to prevent water damage. Tellingly, a makeshift tarp provided greater shelter than the roof Defendants failed to maintain.

31. On September 19, 2024, The Diaper Bank emailed Mr. Adams and Donohoe's Vice President, Michael Cooper, reiterating its concern about the persisting leak. Not long after, The Diaper Bank's staff arrived at 8846 Monard Drive to discover a heavy stream of water leaking into the building, which had damaged storage containers that held hundreds of products The Diaper Bank planned to distribute.

32. Again, The Diaper Bank promptly notified Mr. Adams and Mr. Cooper of the leak, wet dry wall, and now, flooding inside the distribution site. Mr. Cooper informed The Diaper Bank that a roofer would repair the roof later that day.

33. The roofer came the next day, but his cosmetic solution failed to meaningfully address the underlying roof defects. Indeed, the leak continued.

34. Less than one week later, on September 25, 2024, the incessant leak wreaked even more havoc to The Diaper Bank's operations, turning the premises into a breeding ground for mold. Without remediation, The Diaper Bank reasonably believed its inventory could soon become entirely unfit for distribution. Like clockwork, The Diaper Bank urgently emailed Mr. Cooper and Mr. Adams requesting a permanent solution to the leak. No answer.

35. After The Diaper Bank followed up with Mr. Cooper the next day, Mr. Cooper finally responded to let The Diaper Bank know that he had contacted a roofer. Instead of promptly addressing The Diaper Bank's request for a permanent solution, Mr. Cooper recommended that The Diaper Bank relocate its products to a different area within the Leased Premises, acknowledging that portions of the warehouse were unusable. Mr. Cooper informed The Diaper Bank that he would recommend Landlord to repair the roof in the spring of 2025—***more than a year after*** The Diaper Bank first informed Defendants of the leak.

36. The Diaper Bank did not have a week—much less a ***year***—to waste while parents ran out of diapers and formula for their babies. So, The Diaper Bank diverted all its staff, time, and resources toward relocating products to safer areas within the warehouse.

37. On October 3, 2024, The Diaper Bank informed Mr. Adams and Mr. Cooper that it had relocated its products. But of course, Mr. Cooper's short-sighted suggestion to do so ignored the months-long underlying issue. The Diaper Bank's active distribution days at the Leased

Premises would begin five days later, so The Diaper Bank requested that Defendants send someone to repair the roof the next day.

38. The roofer did not come for another five days.

39. And after the roofer left, the leaks continued.

40. The Diaper Bank was never informed of what work Defendants' roofer performed. Not of the scope nor the "results" of the roofer's work. For that reason, The Diaper Bank had no way of verifying whether the work was adequate—until another leak occurred to confirm it was not. The Diaper Bank raised this concern with Defendants, but it went unaddressed.

41. On January 11, 2025, The Diaper Bank contacted Mr. Adams to notify him of yet another leak. This time, melting snow overwhelmed the roof and unleashed significant amounts of water that sprayed into 8846 Monard Drive in multiple directions. The Diaper Bank sent Mr. Adams a video of the leak in an effort to convey the severity and urgency of the issue.

42. As consequences of the roof leaks to The Diaper Bank's operations escalated, Defendants' indifference remained constant.

43. Mr. Adams suggested another short-sighted solution: that The Diaper Bank use a leak diverter to catch the water. Leak diverters are temporary emergency tools to catch and redirect water away from personnel, equipment, and inventory. Basically, he proposed a Band-Aid for a bullet hole. Seeing no other option, The Diaper Bank obliged but emphasized—once again—that the temporary fixes were ineffective and unacceptable.

44. As if matters could not get any worse, The Diaper Bank had critical operation dates the following week, during which its community partners would be visiting the Leased Premises. This timing was of considerable importance to The Diaper Bank because 8846 Monard Drive was not just a storage space; it was the only one of The Diaper Bank's Leased Premises where its

community partners would enter and shop the shelves. As such, the deterioration of 8846 Monard Drive created logistical headaches and risked reputational harm with The Diaper Bank's partners. The very existence of The Diaper Bank depends upon these relationships.

45. On February 13, 2025, The Diaper Bank informed Mr. Adams that the leaks continued to grow and arise more frequently. In response, Mr. Cooper had another leak diverter installed. Another temporary fix.

46. Hearing nothing about Mr. Cooper's September 2024 promise to recommend Landlord to replace the roof once and for all, The Diaper Bank asked Mr. Adams for an update. Mr. Adams confirmed that the roof would be replaced months later in the spring of 2025.

47. The Diaper Bank could not keep waiting for Defendants to do their job. In an attempt to save the rest of its products from irreparable damage, The Diaper Bank began moving all its items—***thousands*** of products—out of the warehouse.

48. On February 18, 2025, The Diaper Bank ceased all business operations at the 8846 Monard Drive warehouse.

49. Having lost precious operational space and the ability to store its products safely anymore, The Diaper Bank was left with no choice but to rapidly distribute more than $125,000 worth of product between February and April 2025, resulting in a distribution shortage for the months ahead.

50. Nearly two years after the initial series of leaks, in late March 2025, roof repairs commenced. But the damage was already done.

51. For years, any report of incoming rain or snow put The Diaper Bank staff on high alert such that they immediately braced for the worst—from ***inside*** the warehouse it leased from its Landlord.

52. Indeed, after any rain or snowfall, The Diaper Bank would lose a substantial portion of usable space in the warehouse.

53. Defendants' years-long refusal to repair the roof and indifference toward the impact of the leak on The Diaper Bank's mission have no doubt had a devastating impact on the organization, but also on the community.

***The Diaper Bank Suffers Great Losses Due to Defendants' Failure to Maintain and Meaningfully Repair Structural Defects.***

54. The Diaper Bank suffered extensive losses because of Defendants' failure to maintain and meaningfully repair the structural defects of the Leased Premises.

55. The persistent roof leaks plaguing 8846 Monard Drive, which The Diaper Bank repeatedly reported for nearly two years, forced The Diaper Bank to dispose of inventory and liquidate over $125,000 worth of product that it could no longer safely store.

56. With every significant weather event, the roof leak rendered a substantial portion of the warehouse space unusable for those two years.

57. Defendants' failures resulted in, among other things, water damage to the warehouse drywall and mold and mildew resulting from repeated water exposure.

58. Due to the Defendants' failures and refusals to address the drywall damage, Defendants have guaranteed that 8846 Monard Drive would continue to pose a hazard to The Diaper Bank's staff, volunteers, patrons, and inventory of donations.

59. The Diaper Bank ceased all business operations at the 8846 Monard Drive warehouse on February 18, 2025, to rescue its donations from potential water damage and ensure the safety of its staff, volunteers, and community partners.

60. The Diaper Bank held a Food Service Facility License to operate The Baby Pantry program. It anticipated that the potential for water damage of some products would result in a

health code violation. To preemptively avoid failing an inspection with the Montgomery County health inspection to occur on March 10, 2025, The Diaper Bank shut down The Baby Pantry program, which required such licensure.

61. When the health inspector visited 8846 Monard Drive, she confirmed that The Diaper Bank was correct to shut down the program in light of these hazards. The health inspector concluded that the continuation of The Diaper Bank's program at 8846 Monard Drive would have indeed been unsuitable for the reception and storage of its products, including baby food and formula.

62. The Diaper Bank estimated a difference of more than $600,000 between the total value of distributed goods in 2024 and 2025 due to the roof leaks. In 2024, the value of the goods distributed through The Baby Pantry program was approximately $935,000. In 2025, after the program was shuttered due to the unfit facilities, the total value of distributed goods was approximately $313,000. Thus, Defendants' actions—and failures to act—have deprived thousands of struggling families of more than $600,000 worth of essential hygiene and baby products on which they have grown to rely. Defendants' failures forced The Diaper Bank to build a makeshift office in one of its remaining warehouse bays located at 8860 Monard Drive to replace its previously designated office space located in the now-defunct 8846 Monard Drive. The Diaper Bank's current "office" was created by shoehorning a table, chairs, and computer technology into a corner portion of 8860 Monard Drive—space otherwise intended to serve its ultimate purpose: storing diaper donations.

63. Since September 25, 2024, 8846 Monard Drive remained unusable for its intended purpose. To this day, Defendants have taken no action to restore 8846 Monard Drive or compensate The Diaper Bank for its losses.

64. To date, The Diaper Bank, in good faith, has paid $36,900.42 in rent, $3,339.86 in common area maintenance fees, and $3,356.82 in utility bills for a wholly unusable and uninhabitable warehouse bay. The Diaper Bank has also paid $1,068.22 in insurance premiums and $4,534.85 in real estate taxes to date.

***The Diaper Bank Attempts Good-Faith Negotiations with Defendants, to no Avail.***

65. On March 24, 2025, The Diaper Bank sent WWDC a letter requesting, among other things, that it replace the roof, reimburse costs related to the roof leaks, abate rent, and restore 8846 Monard Drive to a usable condition. The Diaper Bank expressed its willingness to further discuss the matter via phone or email.

66. The parties attempted to reach a settlement agreement, to no avail, for nearly a year. Remarkably, the parties are in a worse position than they were nearly a year ago because Defendants backpedaled on months' worth of negotiations.

67. After a virtual meeting on October 2, 2025 with The Diaper Bank, Defendants expressed their willingness to arrive at a resolution regarding rent abatement and termination of the Lease at 8846 Monard Drive. Defendants stated they would respond with a written proposal within two weeks.

68. A little over four weeks later, on November 5, 2025, Defendants finally responded stating they would terminate the Lease Agreement with respect to 8846 Monard Drive if The Diaper Bank agreed to vacate by December 31, 2025. Defendants also agreed to abate limited rent and that Defendants would be responsible for the payment of a past, outstanding invoice.

69. On December 9, 2025, The Diaper Bank sent a counteroffer, seeking rent abatement and fees accrued to date while 8846 Monard Drive remained unusable.

70. On December 23, 2025, The Diaper Bank requested an extension of Defendants' deadline to vacate 8846 Monard Drive until January 15, 2026. This extension was necessary to allow The Diaper Bank sufficient time to allocate personnel resources toward vacating 8846 Monard Drive while it simultaneously attempted to maintain ordinary business operations during the busy holiday season.

71. On December 31, 2025, Defendants granted this extension and agreed to meet with The Diaper Bank on January 15, 2026, to finalize terms, which the parties understood would be incorporated into a written settlement agreement immediately thereafter.

***The Diaper Bank Vacates the 8846 Monard Drive Property as a Result of the Leaky Roof and at the Direction of Defendants, then Defendants Renege on Promises.***

72. At the top of the meeting on January 15, 2026, counsel for The Diaper Bank, Kirkland, asked counsel for Landlord, Pat Greaney, if he possessed client authority to come to agreements that day. As he has always represented in the months leading up to this meeting, Mr. Greaney stated that he did.

73. The Diaper Bank had no reason to believe Mr. Greaney lacked client authority that day (or during any negotiation prior). In fact, at various times during the January 15 meeting, the parties' counsel privately conferred with their respective clients to request authority to make or accept certain offers: Kirkland conferred with The Diaper Bank's leadership team and Mr. Greaney conferred with Brian Coakley, the Executive Vice President of Donohoe, on behalf of Defendants.

74. On behalf of their respective clients, the parties' counsel agreed to four presumptively final terms:

- Defendants would abate The Diaper Bank's rent in the amount of $47,832.67;
- Defendants would be held responsible for the payment of a certain past outstanding invoice;

- Defendants would agree to terminate the Lease Agreement with respect to 8846 Monard Drive as of the date of executing a separate lease modification agreement, conditioned upon The Diaper Bank vacating the premises by January 15, 2026; and

- Each party would agree to mutually release the other of all claims.

75. The parties shook hands and Defendants requested that The Diaper Bank begin drafting the settlement agreement to memorialize these terms. The Diaper Bank agreed.

76. The Diaper Bank kept its promises. And Defendants changed their minds.

77. On January 21, 2026, Mr. Greaney forwarded counsel for The Diaper Bank correspondence from David Strouse, Co-Manager of WWDC. Mr. Strouse demanded that before any settlement or lease termination could take place, he required an on-site meeting with The Diaper Bank leadership team.

78. But The Diaper Bank had already kept its promise to vacate 8846 Monard Drive in anticipation of terminating its Lease with respect to 8846 Monard Drive. As such, The Diaper Bank sought assurance from Mr. Greaney that any such meeting between Mr. Strouse and The Diaper Bank's leadership would not stall or materially alter the terms reached on January 15, 2026.

79. Mr. Greaney did not confirm whether Landlord would honor the promises it made on January 15, 2026. He merely reiterated Mr. Strouse's demand that any settlement or lease modification be expressly contingent on a principal-level discussion between Landlord and The Diaper Bank.

80. Landlord denied The Diaper Bank's requests for counsel to attend this meeting. Indeed, The Diaper Bank only obliged Mr. Strouse's demands because it hoped that doing so would facilitate the execution of an agreement, as promised.

81. Upon Landlord's promise that no discussion of the settlement agreement or the parties' legal positions would take place, The Diaper Bank begrudgingly agreed to Mr. Strouse's meeting.

82. On February 2, 2026, The Diaper Bank's leadership team met with Mr. Strouse and Rory Coakley of WWDC. At that meeting, Mr. Strouse insisted that the parties resolve this matter without the involvement of counsel. Mr. Strouse also agreed to extend the due date for February 2026 rent.

83. Mr. Strouse demanded another meeting with The Diaper Bank. The Diaper Bank obliged and met with Mr. Strouse on February 19, 2026. Once more, Mr. Strouse stonewalled The Diaper Bank from involving counsel in this meeting. All the while, he made a series of oral settlement demands that he memorialized later that day in a draft lease modification agreement (despite his promise not to engage in any settlement discussions).

84. Mr. Strouse's draft agreement did not reflect the four promises Defendants had made just five weeks earlier; worse, Mr. Strouse acted as though the parties' hard-fought negotiations for the past nine months never happened.

85. Mr. Strouse offered The Diaper Bank $17,500—a roughly 63% haircut from Defendants' previous offer. To better understand Defendants' radical backpedaling, Kirkland attempted to re-engage negotiations, but Defendants refused to allow the parties' counsel to interact until The Diaper Bank formally responded to Mr. Strouse's offer.

86. Accordingly, Kirkland formally rejected Mr. Strouse's offer on behalf of The Diaper Bank on March 2, 2026 to permit negotiations to continue. Defendants never responded.

87. The next time The Diaper Bank heard from Defendants was on March 16, 2026, when they, without justification, demanded February and March rent for an unoccupied 8846 Monard Drive.

88. After Mr. Strouse inserted himself into the matter and upended the parties' near-year of negotiation efforts, Mr. Greaney indicated to Kirkland that he was never properly

authorized to engage in negotiations on Defendants' behalf—contradicting his previous representations to the contrary.

89. For nearly a year, The Diaper Bank negotiated with Landlord through Mr. Greaney and paid rent associated with 8846 Monard Drive, based on its well-reasoned belief that it was engaging in good-faith discussions with Defendants.

90. Since vacating 8846 Monard Drive on January 15, 2026, The Diaper Bank has not occupied that warehouse bay. The Diaper Bank kept its promise while Defendants have not.

91. Defendants' flip-flopping and refusal to allow the parties' counsel to continue good-faith negotiations have caused serious and substantial interference with The Diaper Bank's use and enjoyment of 8846 Monard Drive.

**COUNT I:**
***BREACH OF CONTRACT***

92. The Diaper Bank re-alleges and incorporates the preceding paragraphs 1 through 91 as if fully restated herein.

93. The Lease Agreement constituted a valid and enforceable contract between The Diaper Bank and Landlord Defendant, WWDC.

94. The Diaper Bank fully performed under the contract by, among other things, paying all rent due under the contract until it was constructively evicted from 8846 Monard Drive.

95. The Lease Agreement required the Landlord "at its expense, to maintain and keep in repair the structural parts of the Leased Premises," including the roof, which it failed or refused to do.

**COUNT II:**
***BREACH OF IMPLIED COVENANT OF QUIET ENJOYMENT***

96. The Diaper Bank re-alleges and incorporates the preceding paragraphs 1 through 91 as if fully restated herein.

97. Defendants substantially interfered with The Diaper Bank's use and enjoyment of 8846 Monard Drive by, among other things, failing to repair and maintain the roof.

98. Defendants' failure to maintain and make vital repairs to the roof of 8846 Monard Drive proximately and directly caused, among other things, water damage to the warehouse drywall and mold and mildew resulting from repeated water exposure, rendering 8846 Monard Drive unfit for storage and distribution of inventory or as functional office space, thus constituting a breach of the Implied Covenant of Quiet Enjoyment.

99. As a result of the Landlord's breach, The Diaper Bank has been damaged in an amount to be determined at trial.

**COUNT III:**
***CONSTRUCTIVE EVICTION***

100. The Diaper Bank re-alleges and incorporates paragraphs 1 through 91 as if fully restated herein. The condition of the 8846 Monard Drive property on and before January 15, 2026, was intolerable and was not caused by The Diaper Bank.

101. Defendants' failure to maintain and repair the 8846 Monard Drive property deprived The Diaper Bank of the enjoyment of its warehouse bay.

102. The Diaper Bank was constructively evicted from 8846 Monard Drive on January 15, 2026, by which date Defendants directed The Diaper Bank to vacate the premises as a condition to fulfill their promise, among other things, to terminate the Lease Agreement with respect to 8846 Monard Drive.

103. As a result of the Constructive Eviction, The Diaper Bank has been damaged.

**COUNT IV:**
***PROMISSORY ESTOPPEL***

104. The Diaper Bank re-alleges and incorporates paragraphs 1 through 91 as if fully restated herein.

105. On December 31, 2025, the parties agreed that the amended lease termination date with respect to 8846 Monard Drive would be extended to January 15, 2026. As such, Defendants directed The Diaper Bank to vacate 8846 Monard Drive by that date.

106. On January 15, 2026, Defendants promised, among other things, to terminate the Lease Agreement with respect to 8846 Monard Drive as of the date of executing a separate lease modification agreement, which was conditioned upon The Diaper Bank vacating the premises by January 15, 2026.

107. Defendants knew and understood that their willingness to enter into a separate lease modification agreement to terminate the Lease Agreement associated with 8846 Monard Drive was the ***only reason*** that The Diaper Bank would agree to vacate 8846 Monard Drive. Defendants made this promise with the expectation that The Diaper Bank would rely upon it.

108. The Diaper Bank did in fact rely on the promise by, among other things, expending substantial time, money, and resources in an effort to vacate 8846 Monard Drive by the January 15, 2026 cut-off.

109. The Diaper Bank's reliance on Defendants' promises was reasonable because this promise, among others, was made by Donohoe acting with actual authority to serve as WWDC's landlord representation and, as Mr. Greaney explicitly represented to The Diaper Bank repeatedly, including on January 15, 2026, Donohoe possessed the actual, or at least apparent, authority to enter into agreements with The Diaper Bank.

110. Defendants have not fulfilled their promise to amend the Lease Agreement to terminate 8846 Monard Drive (or to abate rent for the agreed-upon period during which the premises was unfit for The Diaper Bank's intended use).

111. The Diaper Bank has been damaged by Defendants' failure to fulfill their promises.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Greater DC Diaper Bank, respectfully requests this Court enter judgment in its favor and award monetary damages exceeding $775,000. Plaintiff also respectfully requests this Court award pre-judgment interest on this judgment to the fullest extent permitted by law.

Dated: July 8, 2026

Respectfully submitted,

*/s/ Michael F. Williams*

Michael F. Williams (D.C. Bar No. 486190)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
mwilliams@kirkland.com

*Attorney for Plaintiff*

# Superior Court of the District of Columbia

CIVIL DIVISION - CIVIL ACTIONS BRANCH

INFORMATION SHEET 2026-CAB-004696

GREATER DC DIAPER BANK
Plaintiff(s)

vs

WWDC INDUSTRIAL PARK, LLC and DONOHOE REAL ESTATE SERVICES, INC.
Defendant(s)

Case Number: ______

Date: July 8, 2026

☐ One of the defendants is being sued in their official capacity.

| Name: *(Please Print)* Michael F. Williams | Relationship to Lawsuit |
|---|---|
| Firm Name: Kirkland & Ellis LLP | ☑ Attorney for Plaintiff |
| Telephone No.: (202) 389-5123 — DC Bar No.: 486190 | ☐ Self (Pro Se) ☐ Other: ______ |

TYPE OF CASE: ☐ Non-Jury ☑ 6 Person Jury ☐ 12 Person Jury

Demand: $ Damages in excess of $775,000.00 Other: ______

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.: ______ Judge: ______ Calendar #: ______

Case No.: ______ Judge: ______ Calendar #: ______

NATURE OF SUIT: *(Check One Box Only)*

**CONTRACT**
- ☑ Breach of Contract
- ☐ Breach of Warranty
- ☐ Condo/Homeowner Assn. Fees
- ☐ Contract Enforcement
- ☐ Negotiable Instrument

**COLLECTION/INS. SUB**
- ☐ Debt Collection
- ☐ Insurance Subrogation
- ☐ Motion/Application for Judgment by Confession
- ☐ Motion/Application Regarding Arbitration Award

**EMPLOYMENT DISPUTE**
- ☐ Breach of Contract
- ☐ Discrimination
- ☐ Wage Claim
- ☐ Whistle Blower
- ☐ Wrongful Termination

**REAL PROPERTY**
- ☐ Condo/Homeowner Assn. Foreclosure
- ☐ Declaratory Judgment
- ☐ Drug Related Nuisance Abatement
- ☐ Ejectment
- ☐ Eminent Domain
- ☐ Interpleader
- ☐ Other
- ☐ Quiet Title
- ☐ Specific Performance

- ☐ **FRIENDLY SUIT**
- ☐ **HOUSING CODE REGULATIONS**
- ☐ **QUI TAM**
- ☐ **STRUCTURED SETTLEMENTS**

**ADMINISTRATIVE PROCEEDINGS**
- ☐ Administrative Search Warrant
- ☐ App. for Entry of Jgt. Defaulted Compensation Benefits
- ☐ Enter Administrative Order as Judgment
- ☐ Libel of Information
- ☐ Master Meter
- ☐ Petition Other
- ☐ Release Mechanics Lien
- ☐ Request for Subpoena

**MALPRACTICE**
- ☐ Medical – Other
- ☐ Wrongful Death

**AGENCY APPEAL**
- ☐ Dangerous Animal Determination
- ☐ DCPS Residency Appeal
- ☐ Merit Personnel Act (OEA)
- ☐ Merit Personnel Act (OHR)
- ☐ Other Agency Appeal

☐ **APPLICATION FOR INTERNATIONAL FOREIGN JUDGMENT**

# Information Sheet, Continued

**CIVIL ASSET FORFEITURE**
- ☐ Currency
- ☐ Other
- ☐ Real Property
- ☐ Vehicle

**NAME CHANGE/VITAL RECORD AMENDMENT**
- ☐ Birth Certificate Amendment
- ☐ Death Certificate Amendment
- ☐ Gender Amendment
- ☐ Name Change

**TORT**
- ☐ Abuse of Process
- ☐ Assault/Battery
- ☐ Conversion
- ☐ False Arrest/Malicious Prosecution
- ☐ Libel/Slander/Defamation
- ☐ Personal Injury
- ☐ Toxic Mass
- ☐ Wrongful Death (Non-Medical Malpractice)

**GENERAL CIVIL**
- ☐ Accounting
- ☐ Deceit (Misrepresentation)
- ☐ Fraud
- ☐ Invasion of Privacy
- ☐ Lead Paint
- ☐ Legal Malpractice
- ☐ Motion/Application Regarding Arbitration Award
- ☐ Other - General Civil
- ☐ Product Liability
- ☐ Request for Liquidation
- ☐ Writ of Replevin
- ☐ Wrongful Eviction

**CIVIL I/COMPLEX CIVIL**
- ☐ Asbestos

**MORTGAGE FORECLOSURE**
- ☐ Non-Residential
- ☐ Residential

**STATUTORY CLAIM**
- ☐ Anti – SLAPP
- ☐ Consumer Protection Act
- ☐ Exploitation of Vulnerable Adult
- ☐ Freedom of Information Act (FOIA)
- ☐ Other

**TAX SALE FORECLOSURE**
- ☐ Tax Sale Annual
- ☐ Tax Sale Bid Off

**VEHICLE**
- ☐ Personal Injury
- ☐ Property Damage

☐ **TRAFFIC ADJUDICATION APPEAL**

☐ **REQUEST FOR FOREIGN JUDGMENT**

/s/ Michael F. Williams
Filer/Attorney's Signature

July 8, 2026
Date

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | |
|---|---|
| GREATER DC DIAPER BANK,<br><br>Plaintiff,<br><br>v.<br><br>WWDC INDUSTRIAL PARK, LLC and DONOHOE REAL ESTATE SERVICES, INC.,<br><br>Defendants. | Case No. 2026-CAB-004696 |

**PRAECIPE TO ENTER APPEARANCE**

TO THE CLERK OF THE COURT:

Pursuant to Superior Court Rule of Civil Procedure 101(b), please enter the appearance of Luul Y. Lampkins as counsel for Plaintiff Greater DC Diaper Bank in the above-captioned matter.

Dated: July 10, 2026

Respectfully submitted,

*/s/ Luul Y. Lampkins*

Luul Y. Lampkins (D.C. Bar No. 90029106)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
luul.lampkins@kirkland.com

*Attorney for Plaintiff*

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | |
|---|---|
| GREATER DC DIAPER BANK,<br><br>Plaintiff,<br><br>v.<br><br>WWDC INDUSTRIAL PARK, LLC and DONOHOE REAL ESTATE SERVICES, INC.,<br><br>Defendants. | Case No. 2026-CAB-004696 |

**PRAECIPE TO ENTER APPEARANCE**

TO THE CLERK OF THE COURT:

Pursuant to Superior Court Rule of Civil Procedure 101(b), please enter the appearance of Jasmeene M. Burton as counsel for Plaintiff Greater DC Diaper Bank in the above-captioned matter.

Dated: July 10, 2026

Respectfully submitted,

*/s/ Jasmeene M. Burton*

Jasmeene M. Burton (D.C. Bar No. 90030393)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
jasmeene.burton@kirkland.com

*Attorney for Plaintiff*

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| **GREATER DC DIAPER BANK,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**WWDC INDUSTRIAL PARK, LLC, and DONOHOE REAL ESTATE SERVICES, INC.,**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No.: 2026-CAB-004696**<br>**Judge Edward O'Connell** |

**<u>DEFENDANTS' JOINT CONSENT MOTION FOR EXTENSION OF TIME TO FILE RESPONSIVE PLEADING TO COMPLAINT</u>**

COMES NOW, the Defendants, WWDC Industrial Park, LLC and Donohoe Real Estate Services, Inc., jointly, by and though their respective undersigned counsel, and hereby move this Court pursuant to Rules 6(b), 7(b), and 12 of the Superior Court Rules of Civil Procedure to extend the time for Defendants to file a responsive pleading to Plaintiff's Complaint up through and including August 24, 2026. Plaintiff, through their counsel, consents to the extension. No party will be prejudiced by this extension. There is good cause to grant this extension as all parties agree to the relief requested herein.

WHEREFORE, Defendants, WWDC Industrial Park, LLC and Donohoe Real Estate Services, Inc., respectfully requests that the Court grant their Motion and extend the time for Defendants' responsive pleading to Plaintiff's Complaint up through and including August 24, 2026.

Respectfully submitted this 13th day of August, 2026.

/s/ Landon S. Moyer /s/
Joshua M. Hoffman, Esq. (DC Bar #495390)
Landon S. Moyer, Esq. (DC Bar #1631826)
Franklin & Prokopik, PC
2325 Dulles Corner Blvd., Suite 1150
Herndon, Virginia 20171
Tel.: (703) 793-1800
Fax: (703) 793-0298
jhoffman@fandpnet.com
lmoyer@fandpnet.com
*Counsel for Defendant, WWDC Industrial Park, LLC*

/s/ Madelaine Katz /s/
Madelaine Katz, Esq. (DC Bar #1012001)
Rifkin Weiner Livingston LLC
7700 Wisconsin Avenue, Suite 320
Bethesda, MD 20814
Tel.: (301) 951-0150
Fax: (301) 951-0172
Mkatz@rwllaw.com
*Counsel for Defendant, Donohoe Real Estate Services, Inc.*

**RULE 12-I CERTIFICATION**

Counsel for Defendants hereby certify that they spoke with Plaintiff's counsel, and they consent to the relief requested herein.

/s/ Landon S. Moyer /s/
Landon S. Moyer, Esq. (DC Bar #1631826)

/s/ Madelaine Katz /s/
Madelaine Katz, Esq. (DC Bar #1012001)

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 13th day of August, 2026, a copy of the foregoing was electronically served upon all counsel of record, including:

Michael F. Williams, Esq.
Myra Farooqi, Esq. (*pro hac vice pending*)
Luul Y. Lampkins, Esq.
Kirkland & Ellis LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
mwilliams@kirkland.com
luul.lampkins@kirkland.com
*Counsel for Plaintiff*

Madelaine Katz, Esq.
Rifkin Weiner Livingston LLC
7700 Wisconsin Avenue, Suite 320
Bethesda, MD 20814
Mkatz@rwllaw.com
*Counsel for Defendant, Donohoe Real Estate Services, Inc.*

/s/ Landon S. Moyer/s/
Landon S. Moyer, Esq.

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| **GREATER DC DIAPER BANK,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**WWDC INDUSTRIAL PARK, LLC, and DONOHOE REAL ESTATE SERVICES, INC.,**<br><br>**Defendants.** | ) | **Case No.: 2026-CAB-004696**<br>**Judge Edward O'Connell** |

## ORDER

Upon consideration of Defendants' Joint Consent Motion for Extension of Time to File Responsive Pleading to Complaint, it is this ___ day of __________________, 2026, hereby:

ORDERED, that Defendants' Joint Consent Motion is hereby GRANTED; and it is further

ORDERED, that the deadline for Defendants to file a responsive pleading to Plaintiff's Complaint shall be extended up through and including August 24, 2026.

____________________________________
Judge Edward O'Connell

Copies to: All counsel of record